380 So.2d 1083 (1980)
Robert H. ANDERSON and/or Out Island Charters, Inc., Appellant,
v.
STATE of Florida, DEPARTMENT OF REVENUE, Appellee.
No. 79-361.
District Court of Appeal of Florida, Third District.
February 19, 1980.
Rehearing Denied March 24, 1980.
*1084 A. John Goshgarian and Howard J. Hochman, Miami, for appellant.
Jim Smith, Atty. Gen., and William D. Townsend, Asst. Atty. Gen., Tallahassee, for appellee.
Before PEARSON and SCHWARTZ, JJ., and EZELL, BOYCE F., Jr. (Ret.), Associate Judge.
PER CURIAM.
This case is before us on appeal from a final agency action of the Department of Revenue of the State of Florida, which upheld a proposed tax assessment to be enforced against the appellants herein, Robert H. Anderson and Out Island Charters, Inc. The underlying issue which we must determine is whether an agency rule requiring a certificate of registration by the purchasers at the time of the sale of some sailing vessels, in order to be applicable for a statutory sales tax exemption, may be sustained upon the facts as found by the hearing examiner.
The parties are agreed that there is no dispute concerning the facts on this appeal, and each of them has proceeded in argument from the findings of fact included in the examiner's recommended order.

FINDINGS OF FACT
"1. Petitioner Out Island Charters, Inc., Miami, Florida, is a Florida corporation engaged in the business of selling, leasing, repairing and chartering yachts in South Florida. Robert H. Anderson is president of the firm. During the tax period in question, i.e., December 1, 1973 to November 30, 1976, Petitioner sold various sailing vessels and made repairs thereon. The purchasers individually entered into a "Yacht Charter Management Agreement" with Petitioner under which the latter agreed to act as the owners' agent to obtain charters of the boats from third parties, and to maintain, repair, and dock the vessels at the owners' expense. The agreement provided that Petitioner would receive a percentage of the gross bareboat charter fee. It also contained a provision that the owner could use his vessel at any time without cost provided that no charters had been booked for the particular time period. Although this was a standard provision in all of the contracts, some of the owners deleted it prior to execution of the agreement. In most cases, the owners used their vessels occasionally for the purpose of testing equipment and performing routine maintenance and repairs. At such times, some of them were accompanied by their wives, mechanics, or friends who assisted in handling the vessels or performing the routine maintenance functions. They did not use the vessels for purely personal pleasure trips.

*1085 "When the vessels were purchased, sales tax under Chapter 212, Florida Statutes, was neither collected from the buyers by the Petitioner nor otherwise paid to the state. Sales tax was not paid on various equipment purchases, repair parts, dockage, or other expenses incident to the management and maintenance of the vessels. However, sales tax was collected by Petitioner from the third parties who rented the vessels except for a few inadvertent omissions. At the time Petitioner sold the vessels, none of the purchasers had applied for nor received from Respondent a certificate of registration to engage in or conduct business as a `dealer' in yacht chartering under Chapter 212, Florida Statutes, nor had they provided Petitioner with a certificate of resale. Anderson believed the transactions to be exempt from sales tax because the vessels were purchased for rental purposes, and he was unaware that registration as a dealer and submission of a resale certificate were required to establish such an exemption.
"2. Pursuant to an audit of Petitioner's business by Respondent's tax examiner, a proposed assessment of sales tax, penalties, and interest was issued to Petitioner in the total amount of $28,790.76. The parties met at an informal conference on March 29, 1977, and, as a result of adjustments at that time, a revised Notice of Proposed Assessment was issued on May 19, 1977, showing a total sum due of $26,646.91. Petitioner thereafter requested an administrative hearing in the matter.
"3. In March, 1977, Petitioner's counsel advised the various purchasers of the pending tax audit and requested that they either pay the sales tax if they had used the boats for personal business, or, if the boats had been exclusively used for chartering purposes, that they execute affidavits to that effect, together with applications for certificate of registration as dealers and blanket certificates of resale. Most of the purchasers returned the executed documents and were later registered with the Respondent as dealers in the chartering business.
"4. In one particular transaction wherein James Morgan purchased a vessel from Petitioner, Anderson testified that the vessel was removed from Florida to Tennessee where Morgan lived on the day after full payment had been made under the contract. Anderson, however, did not know if Morgan provided him with an affidavit for exemption of the boat by removal from the state, and no documentary evidence concerning the transaction was presented by Petitioner at the hearing.
"5. In another transaction, Anderson purchased a vessel in 1973 from Coastal Sailing Services, Inc., of Tallahassee, Florida, and paid sales tax in the amount of $1,027.40. Later, Anderson believed that he was exempt from the payment of tax because he had purchased the vessel solely for rental purposes. He communicated with Respondent's sales tax bureau through his accountant for information concerning refund procedures. Remus O. Cook, Jr., an examiner in the state sales tax bureau, advised in a letter of August 14, 1974, that a refund from Coastal Sailing Service could be secured if the vessel had been purchased solely for rental purposes, and that such request to the seller should be accompanied by a certificate of sales tax exemption utilizing a form enclosed with the letter. Although the vessel had been purchased by Anderson, the letter made reference to Out Island Charters, Inc. as the buyer and cited its sales tax registration number. Cook testified that it was departmental policy to grant an exemption if tangible personal property was purchased exclusively for rental purposes, even if the purchaser was not registered as a dealer at the time of sale. However, Henry Coe, Jr., Respondent's Executive Director, testified that registration at or a few days after the time of sale was a prerequisite to exemption in such cases. Anderson proceeded to request the refund from the seller, but the exemption form was executed in the name of Out Island Charters, Inc. He *1086 received the refund in 1975. Respondent's tax examiner assessed this sale in the current proposed tax assessment because he found no documentary evidence that Anderson intended to use the boat for charter purposes when he purchased it, and there was no evidence that Anderson was registered as a dealer at that time or furnished a resale certificate to the seller when it was purchased. No evidence was presented that Anderson had used the boat for personal purposes and he testified that he purchased it solely for rental, but conceded that he had no dealer's registration number at the time of purchase.
"6. Petitioner conceded at the hearing that the tax computations were correct, but contested liability therefor except for the several instances where sales tax had not been collected on boat rentals."
The salient conclusion of law made by the Department is as follows:
"Respondent appears to concede that the boat sales would be exempt from tax if they qualified under Rule 12A-1.71(2) which provides that `equipment' purchased solely for rental purposes is exempt at the time of its acquisition. Although it is indeed questionable if a boat could be construed as `equipment' within the meaning of that rule, it apparently has been the practice of Respondent to exempt such purchases in the past, as evidenced by the testimony of its officials. Respondent, however, contests any such exemption on two grounds: (1) [Found by the Examiner and the Department not to be applicable.] * * * (2) that the purchasers of the vessels were not registered as dealers at the time of purchase and thus petitioner should have collected sales tax on the transactions.
* * * * * *
"The basic question for determination is whether registration as a dealer and submission of a resale certificate some months after the date of sale, as was done in the transactions under consideration, can relate back and provide exemption for such sales. At the outset, it must be kept in mind that exemptions to taxing statutes are to be strictly construed against the taxpayer. Wanda Marine Corporation v. State Dept. of Revenue, 305 So.2d 65 (Fla. 1st DCA 1974). Although it is apparent that the exempt status of the various boat purchases could have been established if the purchasers had been registered as dealers at the time of sale, no evidence has been submitted by Petitioner that they were then so registered or had otherwise complied with the above provisions of Rule 12A-1.38. In view of such failure of proof, relief cannot be granted from the proposed tax assessment with respect to the sales price of the vessels and the interest and penalties thereon."
Only the statute can create a tax. A retail sale under Florida law is defined in Section 212.02(3)(a), Florida Statutes (1977):
"`Retail sale' or a `sale at retail' means a sale to a consumer or to any person for any purpose other than for resale in the form of tangible personal property, and shall mean and include all such transactions that may be made in lieu of retail sales or sales at retail. A resale must be in strict compliance with rules and regulations and any dealer making a sale for resale which is not in strict compliance with rules and regulations shall himself be liable for and pay the tax."
The term "dealer" as used in the foregoing statute is defined in Section 212.06(2), Florida Statutes (1977), as:
"(c) The term `dealer' is further defined to mean every person, as used in this chapter, who sells at retail, or who offers for sale at retail, or who has in his possession for sale at retail, or for use, or consumption, or distribution, or storage to be used or consumed in this state, tangible personal property as defined herein.
"(d) The term `dealer' is further defined to mean any person who has sold at retail, or used, or consumed, or distributed, or stored for use or consumption in this state, tangible personal property and who cannot prove that the tax levied by this chapter has been paid on the sale at retail, *1087 the use, the consumption, the distribution, or the storage of said tangible personal property.
"(e) The term `dealer' is further defined to mean any person, as used in this chapter, who leases or rents tangible personal property, as defined in this chapter, for a consideration, permitting the use or possession of said property without transferring title thereto, except as expressly provided for to the contrary herein."
The rule which the Department held to disqualify the appellants from the exemption is Florida Admin. Code Rule 12A-1.38, which provides in pertinent part:
"(1) It is the specific legislative intent that each and every sale, admission, use, storage, consumption or rental is taxable under Chapter 212, F.S., unless such sale, admission, use, storage, consumption or rental is specifically exempt. The exempt status of the transaction must be established by the dealer. Unless the dealer shall have taken from the purchaser a certificate to the effect that the property or service was purchased for resale and bearing the name and address of the purchaser and the number of his dealer's certificate of registration or a certificate bearing the number of his consumer's exemption certificate, the sale shall be deemed to be a taxable sale at retail.
* * * * * *
"(3) A dealer shall refuse to accept a resale certificate, except as provided in Rule 12A-1.64(23), and shall collect the tax unless the purchaser has obtained a dealer's certificate of registration from the Department of Revenue and the number of his dealer's certificate of registration is stated on the resale certificate."
The question of whether a taxpayer may avoid the assessment of a tax by showing that the use was for an exempt purpose when the taxpayer failed to file the required dealer's certificate prior to the sale has not been determined in Florida, so far as we have been able to discover. In the situation reflected by the finding of the examiner in this case, we hold that it would be grossly unfair not to allow the taxpayer to show the true situation. It must be borne in mind that a tax has been collected from the user in many of the situations covered by this assessment. The department must attempt to avoid double taxation. It is well recognized that "[d]ouble taxation is not only to be avoided, but [also] the intention of the legislature to impose it will not be presumed." 71 Am.Jur.2d State and Local Taxation § 33 (1973); and see Section 212.12(12), Florida Statutes (1977).
Additionally, the Department of Revenue, as found by the examiner, changed its position with regard to the necessity for the dealer's certificate during the progress of its determination of the tax due from the sale of the appellants' boats. This change of position seriously handicapped the appellants in their attempts to satisfy the Department concerning the taxable status of the sales. We hold that the appellants had a right to rely upon the interpretation of the statute as originally set forth. See the principle enunciated in Outdoor Advertising Art v. Florida Department of Transportation, 366 So.2d 114 (Fla. 1st DCA 1979).
We, therefore, reverse the agency action and direct a reassessment of the appellants' liability in accordance with the views herein set forth.
In this connection, it should be noted that, in this court, the Department has confessed error upon the appellants' Point Six, which contends that the Department was not authorized to impress the tax against both Robert H. Anderson and Out Island Charters, Inc., without differentiating which of the two owed which particular portion of the assessment.
The order appealed is vacated and the proceeding remanded.